**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **PAPPAS HARRIS CAPITAL, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:  1:20-cv-6911** |
| **v.** | ) | |
| | ) | |
| **BREGAL PARTNERS, L.P. d/b/a** | ) | |
| **BREGAL PARTNERS and BREGAL** | ) | |
| **INVESTMENTS, INC., PAUL MCGILL,** | ) | |
| **AQUA TERRA US HOLDING LLC, and** | ) | |
| **SCOTT PEREKLIS,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

This Complaint is filed by Pappas Harris Capital, LLC ("Plaintiff"), complaining of the actions of Bregal Partners, L.P. d/b/a Bregal Partners and Bregal Investments, Inc., Paul McGill, Aqua Terra US Holding LLC, and Scott Pereklis, (collectively referred to as "Defendants"), and for cause of action, and in support thereof would respectfully show as follows:

### I. PARTIES

1.      Plaintiff is a Texas limited liability corporation doing business in Dallas County, Texas.

2.      Defendant, Bregal Partners, L.P. d/b/a Bregal Partners ("Bregal Partners"), is a partnership that manages various companies, including Aqua Terra Water Management, L.P. and Advanced Hydrocarbon Corporation, as part of the portfolio of Bregal Investments, Inc. Bregal Partners' principal place of business is S.A.R.L. 277 Park Ave., 29th Floor, New York, NY 10172. All Bregal Partners' activities are conducted out of this New York City office.

3.      Defendant, Bregal Investments, Inc. ("Bregal Investments"), is an investment company that owns Bregal Partners. It is a limited corporation doing business in the State of

New York and may be served through its registered agent, Corporate Service Company, 80 State St., Albany, New York 12207-2543.

4.    Defendant, Paul McGill, is an individual and resident of the State of New York who may be served at 277 Park Ave., 29th Floor, New York, NY 10172.

5.    Defendant, Scott Pereklis, is an individual and resident of the State of New York who may be served at 277 Park Ave., 29th Floor, New York, NY 10172.

6.    Defendant, Aqua Terra US Holding, LLC, is a holding company that owns Aqua Terra Water Management, L.P. and Advanced Hydrocarbon Corporation. Aqua Terra US Holding, LLC.'s principal place of business is 277 Park Ave., 29th Floor, New York, NY 10172.

## II.  JURISDICTION and VENUE

7.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, which provides district courts with jurisdiction over civil actions arising between citizens of different states and involve damages in excess $75,000.

8.    This Court has personal jurisdiction over the all defendants because each entity's principal place of business is in the State of New York and the individual defendants are residents of the State of New York. Bregal Partners and Bregal Investments have made investments from the State of New York, entered into negotiations from the State of New York, contacted the parties to this suit from the state of New York, and directed the business activities of the parties involved in the transaction at issue in this lawsuit from the State of New York. Plaintiff alleges on information and belief that Bregal Partners and Bregal Investments are really the same company or the alter ego of each other, sharing, at a minimum, employees, an office location, and a website.

2

9.     Venue is proper pursuant to 28 U.S.C. 1391(b) because the events giving rise to the allegations in this complaint occurred in this district and all Defendants reside in the Manhattan division of this district.

### III.  **FACTUAL BACKGROUND**

10.    Bregal Partners and Bregal Investments (collectively "Bregal") through its representatives are actively involved in the day-to-day operations and management of Aqua Terra Water Management, L.P. ("Aqua Terra") and Advance Hydrocarbon Corporation ("Advance"), the two Texas companies whose sale forms the basis of this suit. Bregal Partners oversees all management, directs all decision making, and controls all aspects of the Advance and Aqua Terra businesses, specifically those related to the subject sale, which was from their offices in New York City in the State of New York. Specifically, Paul McGill, director for Bregal Partners, was involved in all aspects of the subject sale, including retaining and directing the broker Clay Cummings of Johnson Rice & Company, LLC ("Johnson Rice") to help facilitate it.

11.    Bregal Partners, on behalf of Bregal Investments, is also actively involved in the management of Advance and Aqua Terra. The same directors serve on the "boards" of both companies and Bregal Investments owns between 90-100% of the web of entities connected to Advanced and Aqua Terra. For example, Paul McGill, the representative who had control over the subject sale negotiations, serves as both an officer/director of Bregal Partners and Aqua Terra. Individuals such as Paul McGill are actively involved in the day-to-day operations and management of Advance and Aqua Terra. Importantly, Bregal Investments is the controlling investor in these Texas-based entities and exercises day to day control over them.

12.     During April 2018, Bregal Partners on behalf of Bregal Investments authorized and retained Johnson Rice to serve as its broker-agent/sole advisor in the sale of its Texas-based assets, Advance. The assets included vacuum trucks, tractors and trailers, frac tanks, bob tail vacuum truck, light duty pickup trucks, and miscellaneous small equipment. In addition to these assets, the purchase was for the transfer of master service agreements with existing customers and all Advance employees. All new accounts receivable were also being transferred on the effective date of January 1, 2019. Specifically, on April 5, 2018, Johnson Rice sent Bregal Partners, working on behalf of Bregal Investments, a draft engagement letter for its review, comment, and approval. Bregal Partners, in turn, accepted the engagement by directing a representative of Aqua Terra to execute the agreement. Thereafter, both Bregal entities and Johnson Rice remained in constant contact regarding the sale of the Texas-based (Advance) assets. It is alleged these communications occurred between the broker Clay Cummings and Bregal Partners in New York, New York.

13.     Plaintiff first learned of the offer to sell the Texas-based assets of Advance on August 1, 2018 when Bregal's broker, Clay Cummings, informed Plaintiff that it had been engaged to sell the saltwater-trucking division of "a large network of private equity owned saltwater disposal wells" in Texas. He said the "large private equity group" viewed the assets as a "non-core divestment" and was seeking a "100% sale" of the assets in Texas. After Plaintiff executed a confidentiality agreement, Bregal Partners on behalf of Bregal Investments was identified as the private-equity firm pursuing the sale for profit. Once Bregal's identity was revealed, its broker continued to represent on numerous occasions that it had been retained by Bregal Partners and was looking to Bregal Partners director Paul McGill to make decisions concerning the sale in Texas.

4

14.   In August of 2018, Plaintiff received both a Confidential Information Memorandum and an Opportunity Overview from Johnson Rice on behalf of Bregal. Thereafter, inspections were held in the Bryan (Texas) Yard and guided by Ashley Nesbitt, Vice President of the U.S. Operations for Aqua Terra Water Management. The inspection also included the Earlyne SWD facility and the Giddings (Texas) Yard.

15.   That same month, based on the contacts and representations by Paul McGill and Cory Hall, Plaintiff and Bregal Partners commenced negotiations and due diligence in furtherance of Plaintiff's acquisition of the Texas assets.

16.   Bregal Partners' written contracts (described below) with Plaintiff included three Letters of Intent. A draft of the first Letter of Intent was initially sent to Plaintiff from Clay Cummings on September 6, 2018 after the broker had "an initial discussion with Bregal Partners about the "main points" for the sale. The draft included Bregal Partners as a signatory to the agreement and the correspondence further outlined "key points" that were presumably important to both Bregal entities. Some of the "key points" were as follows:

- Plaintiff offered a purchase price $2,000,000 for the Advance assets, which included, among other things, accounts receivable, customer lists and existing customer base, equipment, knowledge and intellectual property, and goodwill.

- Aqua Terra and Bregal Partners on behalf of Bregal Investments accepted the purchase price.

- Plaintiff agreed to retaining the Business's employees under the Pappas Harris new company AHC Water Solutions, LLC.

- A closing date for the transaction was agreed upon for on or before October 31, 2018 (later amended to November 30,2018 and then again to December 31, 2018).

5

- Pappas Harris entered the due diligence requirements, which included investigation of the prospects, business, assets, contracts, rights, liabilities and obligations of the Business, including financial, marketing, employee, legal, regulatory and technology/IP matters.

- Pappas Harris was in the process of obtaining insurance from Berkley Insurance Company prior to and immediately after the contract was agreed to by both parties.

- A confidentiality agreement was included that was binding on both parties.

- An exclusivity clause was included giving Pappas Harris transaction exclusivity for forty-five-day period (later extended by later amendments of the LOI).

- A Seller Non-Compete Agreement was executed between Pappas Harris Bregal Partners and Aqua Terra.

17.     In its communications with the parties and its broker, Bregal Partners made changes to the agreement, including fixed pricing. (Discussions for a set price per barrel of water was the only major hold-up on the agreement). Then, on September 19, 2018, Plaintiff was informed by email that "Bregal Partners had their board discussion last night and were inclined to move forward under the revised terms" thereby agreeing to the terms of the initial Letter of Intent. Thereafter, on September 24, 2018, representatives for all parties, including Paul McGill on behalf of Bregal Partners, held a conference call to discuss the pertinent terms of the Letter of Intent and next steps for closing. A calendar invite was sent to all parties, including Paul McGill at [paul.mcgill@bregalpartners.com](mailto:paul.mcgill@bregalpartners.com) with the subject "Bregal Partners/Advance Hydrocarbon/Pappas Harris." Bregal Partners never voiced any issue or concern about its inclusion as a signatory. Relying on Bregal Partners' approval and Paul McGill, Scott Pereklis, Cory Hall, and Mark Gandy's authority to execute the sale, a final version of the initial Letter of Intent was then executed between the parties on September 19, 2018. Importantly, at that time

the parties also entered into an agreement providing that **Plaintiff had exclusive rights to purchase the assets until the end of the year.** Another conference call was then held with Cory Hall of Aqua Terra Water Management/Advance Hydrocarbon Corporation, Paul McGill of Bregal Partners/Bregal Investments, and representatives of Plaintiff. Bregal's representatives at that meeting agreed to and accepted the initial Letter of Intent, which was formally executed by Cory Hall on behalf of all Bregal Partners and Bregal Investments and Aqua Terra and Advance Hydrocarbon on September 19, 2018.

18.     Subsequently, all parties, including Bregal Partners, ratified, and performed under the original Letter of Intent and two subsequent extensions. An amended letter of intent was later submitted extending the exclusivity period to November 30, 2018 and then again to December 31, 2018. Advance Hydrocarbon Corporation, Aqua Terra Water Management and Bregal Partners/Bregal Investments accepted the agreement as shown by the signature of Mark Gandy who was signing as the CFO of Bregal Partners/Investments. At no time did Bregal or anyone on their behalf indicate to Plaintiff that Bregal was in any way influenced by Cory Hall's opposition to the sale. Instead, it was always made clear that all decisions regarding the sale were being made by Bregal and its employees. And there was no indication from anyone that Bregal had any reservations about the sale.  These agreements were executed by Bregal Partners with the signors having actual, implied, or apparent authority to execute on behalf of Bregal Partners. As before, neither Bregal entity objected or raised any issue with its inclusion on any of these subsequent letters of intent and continued to participate in due diligence and further negotiations for the sale of the Texas-based assets. Bregal Partners' consistent and continued participation over the sale further indicates its ratification and approval of the sale. Plaintiffs were never informed that any Bregal entity was considering not selling the Advance assets much less that it planned to use

7

Plaintiff's business plan to make the company more profitable if the sale did not close.

19.     Thereafter, in October of 2018, pursuant to the terms and intent of the initial Letter of Intent, a second round of various inspections and examinations, including a search for missing assets, were made by Plaintiff in conjunction with representatives of Defendants. During these inspections, Cory Hall expressed his displeasure with "New York's" decision to sell the trucking company but said he would comply with their wishes. Throughout the negotiations it was clear that Cory Hall was receiving his instructions from Bregal Partners in New York and did not have decision-making authority on his own.

20.     In sum, the initial Letter of Intent documented the transaction setting forth the Terms and Conditions agreed to by the parties. The second and third Letters of Intent were extensions of the first letter and merely extended the exclusivity period – there were no other significant changes.  At NO time during the negotiations did Bregal or any party on its behalf ever indicate that they were not 100% committed to the sale of the Advance assets they had engaged a broker to sell on their behalf.

21.     On November 13, 2018, a meeting was held at the Giddings yard between Paul Breaux and James Clogg of Berkeley Insurance and Plaintiff's local Giddings managers, Jason Pappas and Glenn Gantt, with the purpose of helping underwrite the transition of insurance as well as plans to help get the company in compliance with coming electronic-data logging requirements and other proposed future safety protocols. Inspections of frac tanks at the Bryan division and the Giddings division were then held in early December 2018. During the inspections, various pieces of equipment that were to be included in the sale could not be located by Glenn Gantt, a representative of Plaintiff. Afterwards, on December 10, 2018, a meeting took place at the offices of Aqua Terra Water Management in Houston, Texas. The primary purpose

of the meeting was to discuss saltwater-disposal pricing and terms. But the parties also discussed the closing of the transaction, needs for Advance Hydrocarbon to have priority at the Aqua Terra Water Management wells, the missing trucks and frac tanks, and insurance issues during the ownership transition and moving  forward with the sale. The parties also discussed a "true-up" of working capital, leases and a 90 to 120-day "look-back" on missing trucks after closing. As the meeting progressed, the **parties verbally agreed to all material terms (price, transaction date, assets, liabilities, price of saltwater-disposal and the non-compete) and agreed the transaction would close on or before January 1, 2019**. In fact, Mark Gandy suggested the parties shake hands to memorialize they had a deal. At that time, a final and legally binding oral contract was created.  The basis of the contract was a written document provided by Defendants attorneys to Plaintiff on November 13, 2018. The document was ratified by the verbal agreement of all parties on December 10, 2018 at the Houston meeting.   In continuation of the deal, conference calls were held between Glenn Gantt and David House (of Crystal Company Insurance Agency) and others regarding transitioning of the health, life and disability insurance for Advance Hydrocarbon Corporation to the new company AHC Water Solutions, LLC that was being created by Plaintiff.  Plaintiff also submitted an application to the Railroad Commission of Texas of Organization Report (form P-5) this is the first step required by the state of Texas for Plaintiff taking over this business.   Relying on the parties' agreement, Plaintiff hired new employees to help run the company and made plans for the transition to be completed by December 31, 2018.  Plaintiff hired Brian Breithaupt to act as CFO and was transitioning Glenn Gantt to take over as COO. After the December 10th meeting a contract was created that was confirmed in an email from Cory Hall to Paul McGill indicating a deal had been reached. On December 11, 2018, Paul McGill sent his confirmation email indicating a business deal had been

9

made. Plaintiff relying on the contract moved forward with operational plans.

22.     Suddenly without warning, on December 14, 2018 (3 days after the parties shook hands memorializing they had a deal and a mere 17 days before closing), a "termination letter" was sent from Cory Hall of Aqua Terra Water Management to Josh Harris, a partner of Plaintiff via email. The "termination letter" attempted to unilaterally terminate the agreement while stating the Confidentiality Agreement was still in force. This "termination letter" completely ignored the signed LOIs, the oral contract, promises, and the parties' oral contract based on the asset purchase agreement from November 13, 2018 prepared by defense counsel.  As a result, the attorney representing Plaintiff during the transaction sent a demand letter insisting that Bregal either close on the transaction as agreed or compensate Plaintiff for its losses. Bregal never responded. Thereafter, suit was filed in Texas resulting in Bregal Partners/Investments filing a special appearance, contesting jurisdiction in Texas.

## IV. CAUSES OF ACTION

### A. Breach of Contract

23.     All allegations set forth above are herein incorporated for all causes of action forth coming.

24.     A valid and enforceable contract existed between Plaintiff and Defendants. Defendants breached the contract, which caused damages to Plaintiff.

25.     Plaintiff agreed to acquire from Bregal Partners on behalf of Bregal Investments, the business operations of the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra, for a purchase price of $2,000,000. This acquisition included purchasing the accounts receivable, customer lists and existing customer base, equipment, knowledge and intellectual property, and goodwill, as well as a noncompetition agreement and the right to hire

the company's employees. On September 24, 2018, the Parties executed a Letter of Intent that reflects the essential terms of the Parties' contract. On December 10, 2018, a meeting took place at the offices of Aqua Terra Water Management in Houston, Texas where an oral agreement was reached settling all issues regarding price, transaction date, assets, liabilities, price of saltwater-disposal and the non-compete. This oral agreement confirmed by handshake between the parties represents a legally binding agreement.

26.     The letter of intent shows the basis or structure of the oral contract which was ratified at the December 10, 2018 meeting. The definitive Asset Purchase Agreement was discussed and agreed to at the December 10, 2018 meeting. The letter of intent shows the mutual assent to the terms of an agreement between the parties and the agreed upon consideration, which would form the oral contract.

27.     The defendant failed to fulfill the terms of the sales agreement which constitutes a breach. All items necessary for the creation of a contract had been established and Bregal Partners and Bregal Investments unjustified and unexcused breach has damaged Plaintiff as further explained in the complaint.

**B.  *Promissory Estoppel***

28.     Paul McGill, Bregal Partners and Bregal Investments made promises to the Plaintiff, which the Plaintiff reasonably and substantially relied upon to its detriment causing it damages. Such reliance was foreseeable by Paul McGill, Bregal Partners and Bregal Investments and injustice can be avoided only by enforcing the promises and assessing damages against Paul McGill, Bregal Partners and Bregal Investments.

29.     Bregal Partners on behalf of Bregal Investments made a clear and unambiguous agreement to sell the Saltwater Trucking division of Advance Hydrocarbon Corporation from

Aqua Terra to PappasHarris. PappasHarris had reasonable and foreseeable reliance on the agreement and was injured by both Bregal entities failing to uphold the terms of the agreement, which caused damages to Plaintiff.

### C. Negligent Misrepresentation

30.    The acts and omissions of Paul McGill, Bregal Partners and Bregal Investments, described above, constitutes negligent misrepresentation for which Plaintiff justifiably relied resulting in damages proximately causing injury to Plaintiff. Plaintiff's damages resulted from Paul McGill, Bregal Partners and Bregal Investments gross negligence which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code as well as under New York Civil Practices and Rules.

31.    Paul McGill, Bregal Partners and Bregal Investments misrepresentation of the agreement and terms and conditions of the sale resulted in injuries to the Plaintiff. Plaintiff reasonably relied upon the agreement and representations of Paul McGill, Bregal Partners and Bregal Investments in making expenditures for legal representation, doing due diligence for the sale, undertaking to transition ownership, including personnel and insurance to run the newly acquired companies. Based on the representations of Paul McGill, Bregal Partners and Bregal Investments, Plaintiff hired employees, began the process of obtaining insurance and engaged in other activities to take over and run the business. Plaintiff would show they detrimentally relied upon the Paul McGill, Bregal Partners and Bregal Investments agreements in taking these actions. Nothing the Plaintiff did caused or contributed to Plaintiff's damages and their reliance on the representations of a Paul McGill, Bregal Partners and Bregal Investments and the contract was reasonable.

*D. Fraud and Fraudulent Inducement*

32.     Additionally, Paul McGill, Bregal Partners and Bregal Investments committed fraud against Plaintiff by making representations that were material to the contract, agreement and Plaintiff's actions under the agreement, when they knew that the representations were false, or they made such representations recklessly as a positive assertion with or without the knowledge of the truth. Such representations were made with the intent the Plaintiff act on them. Bregal Partners working on behalf of Bregal Investments never intended to negotiate in good faith and never intended to consummate a sale of the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra to Pappas Harris. Plaintiff relied on the representation causing grievous injury.

33.     The injury includes, but goes beyond, the vast due diligence expenses and time Pappas Harris put into the purchase. Bregal Partners weakened Plaintiff's ability to structure future deals because of the market and competitive advantage Bregal conned out of Pappas Harris. Both Bregal entities' misrepresentations allowed Bregal to gain a competitive advantage that Advance Hydrocarbon Corporation and the Saltwater Trucking Division of Aqua Terra would not have had, but for the dealing with Pappas Harris. Bregal Partners on behalf of Bregal Investments made initial enquires about the sale of the Salt Water Trucking division of Advance Hydrocarbon Corporation from Aqua Terra to Pappas Harris that resulted in confidentiality and exclusivity agreements that provided competitive advantages to Bregal and positioned Bregal to take advantage of the information and business plans acquired from PappasHarris.

34.     The representation that the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra were for sale was solidified by Bregal engaging in the LOI with Pappas Harris. The intent of sale was a material misrepresentation by Paul McGill, Bregal

Partners and Bregal Investments. Bregal Partners and Bregal Investments knew that the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra were being undervalued by false and inaccurate bookkeeping methods evidenced by the failure to find all assets listed in the Confidential Information Memorandum (CIM).

35.     Bregal Partners' and Bregal Investments' intention was to represent the intent of selling and divesting the Saltwater Trucking division from Aqua Terra to determine how valuable Advanced and the Trucking division were as stand-alone entities. Defendants were also trying to determine if they could use the information obtained during the sale negotiations to make the assets more profitable or sellable at a higher price than that offered by Plaintiffs. Bregal decided, partly due to the arguments of Cory Hall, that they could use Plaintiff's information to build a better business model to eventually either charge a higher per barrel disposal price or to dispose of the trucking company rather than owning and operating the trucks and the disposal wells together. Thus, there were no intentions of selling but rather, Defendants wanted to investigate the marketplace based on a ruse created by Bregal Investments and carried out by Bregal Partners. Bregal Partners and Bregal Investments must have seen that one of either Advance Hydrocarbon Corporation or the Saltwater Trucking Division from Aqua Terra was being utilized to cover cost from other aspects of Aqua Terra business. The fraud is clear in the false narrative of attempting to sell the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra. In the false sales negotiations Bregal Partners and Bregal Investments obtained valuable information from Pappas Harris about how Pappas Harris would increase the business and return both to profitability.

36.     Armed with this knowledge and the knowledge the businesses were undervalued based on creative accounting by Aqua Terra, Bregal Partners acting on behalf of Bregal

Investments through Paul McGill and at the direction of Scott Pereklis unlawfully breached and terminated the oral contract which they never intended to carry out. Bregal Investments had the knowledge of how to return both entities back to "profitability" without losing anything in return. The ability to misrepresent the intent to sell allowed Bregal Partners and Investments to obtain insider knowledge of how to make both businesses more profitable while also getting a full accounting of both assets and liabilities of the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra which they suspected to be faulty.

37.     The misrepresentation of the intent to sell was a material breach to the reasonable manner which Pappas Harris entered into the agreement and negotiations. The duty to represent the truth while entering into a contractual relationship is paramount in the ability to contract with confidence. A failure to disclose the fact that the agreement was not made with the intention of being carried out amounts to fraud. Bregal Investments through Bregal Partners deliberately concealed the material fact of the intent to consummate a deal. The fundamental character of the fraud lies in the communication of the misimpression of the intent to sell the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra which induced Pappas Harris to act on the false intent to sell to Pappas Harris detriment. Partners working on behalf of Bregal Investments never intended to negotiate in good faith and never intended to consummate a sale of the Saltwater Trucking division of Advance Hydrocarbon Corporation from Aqua Terra to Pappas Harris.

38.     Plaintiff relied on Defendants' misrepresentations and omissions, which caused damages to Plaintiff. In addition to the due diligence expenses, discussed above, Bregal Partners weakened Pappas Harris ability to structure future deals and gave Bregal a competitive advantage that the Salt Water Trucking division of Advance Hydrocarbon Corporation from

15

Aqua Terra would not have had, but for the dealing with Pappas Harris, thereby making the Salt Water Trucking division of Advance Hydrocarbon Corporation from Aqua Terra more profitable and creating a higher margin should Bregal Partners and Bregal Investments actually try and sell the assets in the future. Such unlawful gains would be the result of Defendants' fraud and should be disgorged. Simply put, if Bregal honestly intended to sell the business units they would not have continued to listen to arguments from Aqua Terra's Cory Hall against the sale, or that he/they could now run the businesses at a profit, after obtaining Plaintiff's information to make the companies more profitable, and to eventually sell the business for $15,000,000, which is much more than Bregal ever visualized the companies being worth, thereby creating an incentive for Defendants to commit fraud on the Plaintiff.

39.    Alternatively, if the December 10, 2018 meeting where an oral contract was created, did not bind Bregal Partners and Bregal Investments, then Bregal, Paul McGill and Scott Pereklis fraudulently induced Plaintiff to enter the transaction causing damages to the Plaintiff for which it seeks recovery.

**E.  *Tortious interference with Contract by Bregal Partners and Bregal Investments***

40.    Alternatively, if the oral contract created at the December 10, 2018 meeting did constitute a legally binding contract between Aqua Terra and PappasHarris, Bregal Partners and Bregal Investments,  Paul McGill and Scott Pereklis tortuously interfered with the contractual relations of Aqua Terra and PappasHarris resulting in a breach of contract. The only defendant with authority to breach the contract was Bregal.

41.    A valid contractual agreement existed between Aqua Terra and PappasHarris. Bregal Partners and Bregal Investments, Paul McGill and Scott Pereklis all had knowledge of the contractual agreement between Aqua Terra and PappasHarris. The interference of both Bregal

entities, Paul McGill and Scott Pereklis were intentional resulting in the sale not going through and a breach of the contract. As a result of the interference with the contract Plaintiff suffered damages in the failure of the sale. Plaintiff lost the benefit of the contractual arrangement and suffered economic damages as a result.

## V.  ALTER EGO

42.     Aqua Terra US Holding, LLC, Bregal Partners and Bregal Investments are alter egos of each other. All companies share the same principal place of business in New York, New York. Bregal Partners directors are members of Aqua Terra board of directors and the companies share employees. The companies act in unison and all allegations alleged above or below apply to each company directly or indirectly through the close nexus of the companies. It is believed that Aqua Terra US Holdings, LLC is used by Bregal Partners and Bregal Investments as a vehicle to provide financing, management, and control of Aqua Terra water Management, LP.

## VI. PUNITIVE DAMAGES

43.     Because the acts of the Bregal entities were made intentionally, fraudulently and with malice, Plaintiff is entitled to recover punitive and exemplary damages. Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future. (See, e.g., Toomey v. Farley, 2 N.Y.2d 71, 83 [156 N.Y.S.2d 840, 138 N.E.2d 221]; Krug v. Pitass, 162 N.Y. 154, 161 [56 N.E. 526]; Hamilton v. Third Ave. R.R. Co., 53 N.Y. 25, 28; Oehlhof v. Solomon, 73 App.Div. 329, 333–334 [76 N.Y.S. 716].) The actions undertaken by Bregal Partners and Bregal Investments were done with malicious intent and thus give rise to an award of punitive damages.

## VII. **DAMAGES**

44.     Plaintiff reasserts and incorporates by reference the allegations set forth above.

45.     Plaintiff has retained Bruce W. Bowman, Jr., and the law firm of GODWIN BOWMAN PC in the Texas litigation and Justin L. Williams and Sean Williams of Williams Attorneys PLLC and Alex J. Brown and Mark Lanier of the Lanier Law Firm to represent it in this action and has agreed to pay the firm reasonable and necessary attorneys' fees. Plaintiff seeks recovery of its reasonable and necessary attorney's fees, expenses, and costs, as authorized pursuant to applicable Texas/New York law or at equity, and pursuant to the agreements sued upon.

46.     Plaintiff is entitled to all direct damages which flow naturally and probably from the breach of contract including but not limited to all expectation damages. The Plaintiff is entitled to damages based on the expectation interest as measured by: the loss of value  to Pappas Harris of the failure to acquire the Salt Water Trucking division of Advance Hydrocarbon Corporation from Aqua Terra; any other loss, including incidental or consequential loss, caused by the breach; including all expenses related to vetting, due diligence and performance of the contract.

47.     Additionally, any loss of profits which include the amount of profits reasonably expected from reselling the Advance Hydrocarbon Corporation and the Saltwater Trucking Division in the future based on economic growth of the businesses, including that reasonably expected from Plaintiffs expertise in the industry and connections in the Texas oil & gas industry.

48.     Furthermore, Pappas Harris is entitled to any increase in profitability from Advance Hydrocarbon Corporation and the Saltwater Trucking Division due to the knowledge

18

gained fraudulently including any increase in the marketability of both assets.

## VIII. <u>JURY DEMAND</u>

49. Plaintiff demands trial by jury of all issues so triable.

## IX. <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays and requests that Defendants be cited to appear and answer and that the Court award Plaintiff judgment for:

a. All actual and consequential damages;

b. Exemplary damages;

c. All reasonable and necessary attorney's fees, expenses and costs incurred in this action;

d. Prejudgment and post-judgment interest;

e. Court costs; and

f. All other relief to which Plaintiff is entitled, legal or equitable, general or special.

Dated: August 26, 2020

Respectfully submitted,

WILLIAMS ATTORNEYS, P.L.L.C.

*Justin L. Williams*
Justin L. Williams
Texas State Bar No.: 21555800
Justin@williamstrial.com
Sean J. Williams
Texas State Bar No.: 24103990
Sean@williamstrial.com
500 N. Water Street, Suite 500
Corpus Christi, TX 78401
Telephone: (361) 885-0184
service@williamstrial.com

19

THE LANIER LAW FIRM, P.C.

_____

W. Mark Lanier
New York State Bar No.: 4327284
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
New York State Bar No.: 4593604
Alex.Brown@LanierLawFirm.com
126 East 56th Street, 6th Floor
Tower 56
New York, NY  10022
Telephone: (212) 421-2800

***Attorneys for Plaintiff,***
***Pappas Harris Capital, LLC***

20