USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/27/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

PAPPAS HARRIS CAPITAL, LLC,                          :
                                                     :
                                    Plaintiff,       :
                                                     :
                    -against-                        :        20-CV-6911 (VEC)
                                                     :
BREGAL PARTNERS, L.P. d/b/a BREGAL                   :        OPINION & ORDER
PARTNERS, BREGAL INVESTMENTS, INC.,                  :
PAUL MCGILL, AQUA TERRA US HOLDING                   :
LLC, and SCOTT PEREKLIS,                             :
                                                     :
                                    Defendants.      :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Pappas Harris Capital, LLC ("Pappas Harris") sued Bregal Partners, L.P. ("Bregal

Partners"), Bregal Investments, Inc. ("Bregal Investments"), and Aqua Terra US Holding LLC

("Aqua Terra")[1] for breach of contract, promissory estoppel, negligent misrepresentation, fraud

and fraudulent inducement, and tortious interference with contract.  First Am. Compl. ("FAC"),

Dkt. 59 ¶¶ 35–70.  Bregal Investments and Aqua Terra moved to dismiss for failure to state a

claim and pursuant to the *forum non conveniens* and *Colorado River* doctrines.  Notice of Mot.,

Dkt. 64.  Bregal Partners moved to dismiss for lack of personal jurisdiction.  Notice of Mot., Dkt.

60.  For the following reasons, Bregal Investments and Aqua Terra's motion to dismiss is

GRANTED, Bregal Partners' motion to dismiss is DENIED as moot, and the case is

DISMISSED in its entirety.

---

[1]      Pappas Harris also sued Paul McGill, alleged Director of Bregal Investments, Original Compl., Dkt. 5 ¶ 4;
First Am. Compl. ("FAC"), Dkt. 59 ¶ 8, and Scott Perekslis, alleged Co-Founder and Managing Director of Bregal
Partners, Original Compl. ¶ 5; FAC ¶ 8.  Pappas Harris later voluntarily dismissed both Defendants.  Notices, Dkts.
41, 42.

## BACKGROUND

Pappas Harris is a Texas private equity firm that sought to purchase the Saltwater Trucking Division and other Texas-based assets owned by Advance Hydrocarbon Corporation ("Advance"), a company that provides saltwater disposal services.  FAC ¶¶ 1, 11.  Pappas Harris contends that Bregal Partners and Bregal Investments (collectively the "Bregal entities") own and control Advance and were actively involved in the discussions regarding the sale of the assets.  *Id.* ¶¶ 11, 13.  In August 2018, Johnson Rice, a broker allegedly representing the Bregal entities,[2] approached Pappas Harris with the purchase opportunity.  *Id.* ¶¶ 12, 14.  Pappas Harris alleges that it entered into an oral contract with Defendants to purchase the assets for $2,000,000.  *Id.* ¶¶ 1, 36.  As part of the sale process, Pappas Harris executed three letters of intent with Cory Hall, the CEO of Advance, whom Pappas Harris alleges was acting on behalf of Advance, Aqua Terra, and the Bregal entities.  *Id.* ¶ 19.  On December 10, 2018, Cory Hall and his colleagues Clay Cummings and Mark Gandy, allegedly representing the Bregal entities and Aqua Terra, met with Josh Harris, Jason Pappas, Glenn Gantt, and John Hughett, representing Pappas Harris, at Aqua Terra's offices in Texas to discuss an Asset Purchase Agreement and to finalize the sale.  *Id.* ¶ 26.  Pappas Harris alleges that at the meeting Hall and Gandy "informed Harris that Bregal had already signed-off on the deal and provided its approval."  *Id.* ¶ 27.  Pappas Harris further alleges that those present at the meeting agreed that the deal would close on or before January 1, 2019.  *Id.*  On December 14, 2018, two weeks before the closing, Cory Hall sent Pappas Harris

---

[2]       Pappas Harris alleges that Bregal Partners and Bregal Investments are alter egos of each other and refers to the entities collectively as "Bregal."  FAC ¶ 8.  According to the complaint, Johnson Rice is a broker that was representing "Bregal," and Bregal Partners was listed as a signatory on the letters of intent for the sale.  *Id.* ¶¶ 12, 16.  There is a dispute whether the entity that employed Johnson Rice and was listed as signatory on the letters of intent was Bregal Partners, L.P., Bregal Investments, or both.  *Compare* Mem. of Law, Dkt. 61 at 5 (arguing that Bregal Partners, L.P. is a separate entity with no connection to the failed deal and that Bregal Investments was informally using the name Bregal Partners) *with* Resp., Dkt. 71 at 8 (arguing that Bregal Partners, L.P. and Bregal Investments are alter egos, and both were actively involved in the negotiations regarding the asset sale).

an email "terminating the proposed transaction between Advance Hydrocarbon Corporation and [Pappas Harris]." *Id.* ¶ 30; Email, Dkt. 73-4 at 1.

Pappas Harris alleges that Aqua Terra, Bregal Partners, and Bregal Investments have an alter ego relationship and that Bregal Partners and Bregal Investments share employees and a website, conduct business together as "Bregal," and are "actively involved in the management and control of Advance and Aqua Terra." FAC ¶¶ 32–33. Pappas Harris further asserts that the Bregal entities share board members with Advance and Aqua Terra. *Id.* ¶ 9. Cory Hall, who was stationed in Texas, told Pappas Harris that the deal "was directed and controlled out of New York," implying that the Bregal entities, which Pappas Harris alleges are both based in New York, were in charge of the deal. *Id.* ¶¶ 7–8, 33. Pappas Harris claims that an oral contract was formed at the December 10, 2018 meeting, making the Asset Purchase Agreement as it stood at the meeting binding on all parties. *Id.* ¶ 27–28. Defendants contend that there was no binding agreement and that they were free to abandon the deal. Mem. of Law, Dkt. 65 at 16–17.

On March 5, 2019, Pappas Harris sued Advance, Aqua Terra, Cory Hall, Mark Gandy, and Bregal Partners in Texas state court. Original Texas Compl., Dkt. 66-6 at 1. In the Texas lawsuit, Pappas Harris sued for breach of contract, promissory estoppel, negligent misrepresentation, and fraud/fraudulent inducement in connection with the negotiations for the sale of Advance's Saltwater Trucking Division and related assets. *Id.* ¶¶ 32–45.

Bregal Partners moved to dismiss the state lawsuit for lack of personal jurisdiction. State Ct. Order, Dkt. 66-8 at 1. Pappas Harris argued that Bregal Partners was a "private equity firm[] that engaged in communications and negotiations for the sale of some of Bregal's assets located in Texas." State Ct. Resp., Dkt. 66-7 at 1. On October 29, 2019, the Texas state court granted Bregal Partners' motion and dismissed Bregal Partners for lack of personal jurisdiction. State Ct. Order, Dkt. 66-8 at 1.

3

On September 9, 2020, Aqua Terra filed its own motion contesting personal jurisdiction in the Texas case.  State Ct. Mot., Dkt. 66-10 at 1.  Pappas Harris argued that jurisdiction was proper because Aqua Terra does business in Texas and was involved in the contract negotiations, which occurred in Texas.  State Ct. Resp., Dkt. 66-11 ¶¶ 27, 29.  On December 9, 2020, the Texas state court denied Aqua Terra's motion.  State Ct. Order, Dkt. 66-12 at 1.  Accordingly, it remains a party in the state case.

The state case is currently pending before the District Court of Harris County, Texas. Discovery is complete and trial is scheduled to commence in December 2021.  State Ct. Scheduling Order, Dkt. 66-13 at 1; Reply, Dkt. 75 at 1.

On August 26, 2020, Pappas Harris filed this action.  Original Compl., Dkt. 5 at 19. After Pappas Harris amended its complaint, Bregal Partners moved to dismiss for lack of personal jurisdiction, arguing that it is a Bailiwick of Jersey company with no operations in New York and no connection to the alleged deal that is at the heart of this matter.  Mem. of Law, Dkt. 61 at 4.  Bregal Investments and Aqua Terra moved to dismiss for failure to state a claim and pursuant to the *forum non conveniens* and *Colorado River* doctrines.[3]  Notice of Mot., Dkt. 64 at 1; Mem. of Law, Dkt. 65 at 2–4.  Pappas Harris opposed both motions.  Resp., Dkt. 71; Resp., Dkt. 72.

## LEGAL STANDARD

When a defendant moves to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and also moves to dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first.  *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).  Accordingly, the Court first considers the portion of Bregal Investments and Aqua

---

[3]     Bregal Partners joined the motion to dismiss filed by Aqua Terra and Bregal Investments.  Mem. of Law, Dkt. 61 at 19; Reply, Dkt. 74 at 10 n.7.

Terra's motion to dismiss pursuant to the *Colorado River* doctrine, because "[a] motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure." *Iacovacci v. Monticciolo*, No. 18-CV-7984, 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019) (quoting *Stahl York Ave. Co., LLC v. City of New York*, No. 14-CV-7665, 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015), *aff'd*, 641 F. App'x 68 (2d Cir. 2016)).

To conserve judicial resources, the *Colorado River* doctrine empowers federal courts to abstain from exercising subject matter jurisdiction "when substantially the same parties are contemporaneously litigating substantially the same issue[s] in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012); *see generally Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). "In evaluating abstention decisions . . . '[the Court's] task . . . is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the surrender of that jurisdiction.'" *Niagara Mohawk*, 673 F.3d at 101 (emphasis in original) (quoting *Cone*, 460 U.S. at 25–26). *See also Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

"The burden of persuasion is with the party moving for *Colorado River* abstention." *Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, No. 19-CV-3868, 2020 WL 1503558, at *5 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 830 F. App'x 50 (2d Cir. 2020). The Court must take the facts in the complaint as true and "'draw all reasonable inferences in favor of the party asserting jurisdiction' [but it] may refer to 'evidence outside of the pleadings, such as affidavits' to resolve

'disputed jurisdictional fact issues.'"  *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017) (citations omitted).

To determine whether abstention is appropriate pursuant to *Colorado River*, courts conduct a two-step assessment: first, the court must determine whether the state and federal cases are parallel; second, the court must weigh six factors to determine whether exceptional circumstances warrant abstention.  *Niagara Mohawk*, 673 F.3d at 100.

## DISCUSSION

### I.     The State and Federal Cases Are Parallel

"[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."  *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). "Federal and state proceedings are parallel if 'substantially the same parties are contemporaneously litigating substantially the same issue[s]' in both forums."  *Iacovacci*, 2019 WL 2074584, at *4 (quoting *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012)).  The lawsuits need not be identical; rather, "the 'parallel' requirement is satisfied when the main issue in the case is the subject of pending litigation."  *Weiser v. Koch*, 632 F. Supp. 1369, 1386 (S.D.N.Y. 1986).

#### A.  Substantially the Same Issues

To evaluate whether the state and federal cases concern substantially the same issues, courts compare the claims at issue, the relief sought, and the facts giving rise to the two cases. *See Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 359 (2d Cir. 1985); *Iacovacci*, 2019 WL 2074584, at *4; *Phillips*, 252 F. Supp. 3d at 295–96; *Cong. Talcott Corp. v. Roslin*, No. 95-CV-7698, 1996 WL 499337, at *3 (S.D.N.Y. Sept. 4, 1996).

"Complete identity of . . . claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation."  *GBA Cont.*

*Corp. v. Fid. & Deposit Co. of Md.*, No. 00-CV-1333, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001).  For that reason, federal courts have abstained when faced with a federal case that includes a claim or claims not in the state case, when the state case claims involve the same factual allegations as those at issue in the federal case.  *See, e.g.*, *Iacovacci*, 2019 WL 2074584, at *5 (abstaining even though four claims were raised only in the federal case because they "consist[ed] of the same factual allegations as [the state] claims"); *Abe v. New York Univ.*, No. 14-CV-9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (finding claims substantially similar and abstaining when claims brought only in federal court "center[ed] around the same series of events" as the state court claims and "involve[d] essentially the same issues of law").

In this matter, both cases involve claims for breach of contract, promissory estoppel, negligent misrepresentation, and fraud/fraudulent inducement.  *Compare* FAC ¶¶ 35–70 *with* Operative Texas Compl., Dkt. 66-9 ¶¶ 32–45.  The only claim in the federal complaint that is not also in the state complaint is Plaintiff's claim for tortious interference with contract against Bregal Partners and Bregal Investments.  Mem. of Law, Dkt. 72 at 42 n.10; FAC ¶¶ 49–54.  But all of the claims arise from the same underlying set of facts: the alleged oral contract to sell a Saltwater Trucking Division and other Texas-based assets to Pappas Harris.  The single exclusively-federal claim arises from the same facts as those at issue in the state case, so the claims in the two cases are substantially similar.

Although this finding is enough on its own to conclude that the claims in the two cases are substantially similar, courts sometimes also consider whether "there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Phillips*, 252 F. Supp. 3d at 295 (quoting *Abe*, 2016 WL 1275661, at *6); *see also Machat v. Sklar*, No. 96-CV-3796, 1997 WL 599384, at *7 (S.D.N.Y. Sept. 29, 1997) (cleaned up)

("[E]ven if the claims asserted are not identical, if the claims raised in the federal proceeding 'could be satisfactorily adjudicated in [the state] proceeding,' abstention may be warranted.").

The exclusively-federal tortious interference claim does not eliminate parallelism because it is substantially likely that the state case will dispose of all the claims in the federal lawsuit. Defendants' defense in Texas is that there was no contract with Plaintiff.  If they prevail in Texas, that will resolve the exclusively-federal tortious interference claim because the existence of a contract is an element of tortious interference under Texas law.[4]  *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.* 29 S.W.3d 74, 77 (Tex. 2000).  In such instances, courts have found that the state and federal cases are parallel, and that abstention is appropriate.  *See Phillips*, 252 F. Supp. 3d at 297 (finding cases parallel because the only claim unique to the federal action "depends on whether [breach occurred] in the first instance," which could be determined in state court); *Abe*, 2016 WL 1275661, at *6 (finding "a substantial likelihood that the State Action will dispose of . . . the Federal Action, since a victory for Defendant on Plaintiff's [state] claims will necessarily require dismissal of Plaintiff's [federal] claims.").

On the other hand, if Pappas Harris were to prevail in state court the exclusively-federal claim would become irrelevant because Pappas Harris cannot be awarded any damages for tortious interference with contract under Texas state law beyond what it would be entitled to for its breach of contract claim.  *See Am. Nat. Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990) ("The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed.").  Pappas Harris acknowledges the link between damages for the

---

[4]     The parties agree that Texas state law applies to the tortious interference claim.  Mem. of Law, Dkt. 65 at 16 n.5; Resp., Dkt. 72 at 37.

tortious interference claim and those associated with its breach of contract claim; it states in the

FAC that "[a]s a result of the interference with the contract, Plaintiff . . . . lost the benefit of the

contractual arrangement and suffered economic damages as a result."  FAC ¶ 54.  Because

additional damages for the tortious interference with contract claim are precluded as a matter of

law, even if Pappas Harris were to prevail in state court, resolution of the state claims necessarily

renders the exclusively-federal claim moot.[5]   Accordingly, the federal and state cases have

substantially similar claims, supporting a finding that the two cases are parallel.

Seeking the same forms of relief is another indication of parallelism.  *Iacovacci*, 2019

WL 2074584, at *4 ("[T]he Court finds that the state action and this federal action are parallel [in

part because] both complaints seek the same relief."); *see also Telesco*, 765 F.2d at 359, 362.  In

both cases, Pappas Harris seeks the same forms of relief: actual, consequential, and punitive

damages; attorneys' fees, expenses, and costs; prejudgment and post-judgment interest; and all

other equitable or legal relief to which it is entitled.  *Compare* FAC at p. 32 *with* Operative Texas

Compl. at p. 13.  The complete identity between the forms of relief sought further supports the

conclusion that the issues are substantially similar and the cases parallel.

Substantial similarity between two cases also exists if the same facts underlie both cases.

*See Telesco*, 765 F.2d at 362 (finding cases "essentially the same" despite appellant's new "cause

of action not raised in the state courts" partly because they "concern[] the same events"); *Abe*,

2016 WL 1275661, at *6 (finding federal and state cases parallel because they arose from the

same series of events despite involving claims based on different statutes); *Cong. Talcott*, 1996

WL 499337, at *3 (finding cases with nonidentical claims parallel because "the exact same

---

[5]        It is conceivable that Pappas Harris sued the Bregal entities because they have deeper pockets than the state
defendants.  But Pappas Harris did not make any allegations or arguments to that effect.  Even if it had, such
considerations are wholly unrelated to whether abstention is appropriate pursuant to *Colorado River*.

events underlie both actions"). "What matters is that the claims concern the *same events* and involve sufficient overlap of subject matter." *Machat*, 1997 WL 599384, at *7 (emphasis added) (citation omitted).

Here, both cases arise from the alleged breach of an oral contract to sell the assets of Saltwater Trucking Division and other Texas-based assets to Plaintiff. *Compare* FAC ¶ 1 *with* Operative Texas Compl. ¶¶ 14–31. That a common set of facts gives rise to both cases further supports the conclusion that the cases are parallel.

In short, the cases involve substantially similar issues because the claims are nearly identical, the requested relief is the same, and the underlying facts are the same.

### B. Substantially the Same Parties

As with claims, "exact identity of parties is not required" for cases to be found to be parallel. *Greenburgh No. 11 Fed'n of Tchrs. v. Bd. of Educ. of Greenburgh Eleven Union Free Sch. Dist.*, No. 95-CV-2938, 2006 WL 4490731, at *2 (S.D.N.Y. Sept. 26, 2006). "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985).

Parties are substantially similar "when the interests of the parties in each case are 'congruent.'" *Greenburgh*, 2006 WL 4490731, at *2; *see also Canaday v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y.), *aff'd sub nom. Cannady v. Valentin*, 768 F.2d 501 (2d Cir. 1985); *AMNEX, Inc. v. Rowland*, 25 F. Supp. 2d 238, 243–44 (S.D.N.Y. 1998). Parties' interests are congruent when they would benefit from the same outcome. *See AMNEX*, 25 F. Supp. 2d at 244 ("The congruence of the Defendants' interests is clear — they all wish to defeat [plaintiff]'s identical breach of contract and fraud claims against them, claims that arise out of the same alleged misrepresentations and contractual breaches."); *Afr. Methodist Episcopal Church v.*

*Lucien*, 756 F.3d 788, 798 (5th Cir. 2014) ("[T]hose named as parties in the two actions are not precisely identical, but the record is clear that there are only two sides in this dispute: The interests of all of the parties named in either action align undisputedly, either with [one defendant]'s interest or with [one plaintiff]'s."); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (finding plaintiffs' interests congruent when the "relief requested will benefit [both of] them").

Here, the parties in the state and federal actions, although not identical, are substantially similar.[6]  Pappas Harris is the sole Plaintiff in both cases.  *Compare* FAC ¶ 2 *with* Operative Texas Compl. ¶ 2.  The Defendants in the state case are Advance Hydrocarbon Corporation, Aqua Terra Water Management a/k/a Aqua Terra U.S. Holdings, L.L.C., Cory Hall, and Mark Gandy.  Operative Texas Compl. ¶¶ 3–7.  The federal Defendants are Aqua Terra US Holding LLC, Bregal Partners, and Bregal Investments.  FAC ¶¶ 3–5.

Pappas Harris argues that the cases are not parallel because the Bregal entities are exclusively-federal defendants; for that reason, it argues, resolution of the state court action "will not dispose of all claims presented in the federal case."  Resp., Dkt. 72 at 42.  To support that premise, Pappas Harris cites *Wells Fargo Century, Inc. v. Hanakis*, No. 04-CV-1381, 2005 WL 1523788 (E.D.N.Y. June 28, 2005), which held that "the fact that [one defendant in the federal case] is not a party to the State Court Action is a distinction far more significant than the

---

[6]     The similarity of the issues alone can be enough to overcome the lack of identity of the parties.  *See Pabco Constr. Corp. v. Allegheny Millwork PBT*, No. 12-CV-7713, 2013 WL 1499402 (S.D.N.Y. Apr. 10, 2013) (cleaned up) ("Complete identity of parties is not required, in situations where, as here, the main issue in the case is the subject of already pending litigation."); *Congr. Talcott Corp. v. Roslin*, No. 95-CV-7698, 1996 WL 499337, at *4 (S.D.N.Y. Sept. 4, 1996) (finding federal and state cases parallel even though the parties were not the same because "the exact same events underlie both actions"); *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (finding cases parallel because "inclusion [of additional defendants] in the federal proceeding [did] not alter the case's central issue (the same one presented by the [state] action)").

        In this case, the overwhelming similarity of the issues is sufficient for the Court to conclude that the cases are parallel, even though the parties are not identical.  As additional support for parallelism, however, the Court examines the similarity of the parties.

similarity of subject matter" and requires finding that the two cases are not parallel. *Id.* at *9. The court in *Hanakis* reached this conclusion after finding that "none of the cases cited (or that this Court is aware of) stay or dismiss an action in federal court [pursuant to *Colorado River*] when the defendant is not party to the state proceedings." *Id.*

The Court declines to follow *Hanakis* because not only do such cases exist in the Second Circuit, they are quite common. *See, e.g.*, *Iacovacci*, 2019 WL 2074584, at *5 (finding cases parallel even though the federal defendant was not named in the state case); *Pabco Constr. Corp. v. Allegheny Millwork PBT*, No. 12-CV-7713, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013) (same); *Garcia v. Tamir*, No. 99-CV-0298, 1999 WL 587902, at *1 (S.D.N.Y. Aug. 4, 1999) (finding the two cases parallel even though some federal defendants had been dismissed from the state action); *Congr. Talcott*, 1996 WL 499337, at *1, *3 (finding substantially similar parties even though the cases had no defendants in common).

Accordingly, the Court concludes that the existence of defendants in the federal case but not in the state case "by itself does not destroy the parallel nature of the cases." *Interstate Material Corp.*, 847 F.2d at 1288. What Pappas Harris suggests is a hard and fast rule is often overcome when the exclusively-federal parties have interests that are congruent with those of the parties to the state action. Here, Pappas Harris alleges that the Defendant companies are all closely related, asserting that all of its allegations "apply to each company, directly or indirectly, through the close nexus of the companies." FAC ¶ 33. The Plaintiff's own allegations suggest that the exclusively-federal defendants have the same interest as the state defendants in refuting Pappas Harris's allegations. For the avoidance of doubt, the Court will, nevertheless, assess whether each party to the federal action has interests that are congruent with those of the state parties.

### 1.      Pappas Harris

Pappas Harris is the sole Plaintiff in both cases.  While abstention is not appropriate when none of the federal plaintiffs is present in the state case, *Dittmer*, 146 F.3d at 118, here, the undisputed identity of plaintiffs in the state and federal cases supports a finding that the two cases are parallel.[7]

### 2.      Aqua Terra US Holding LLC

Even though Pappas Harris uses slightly differently corporate names in the state and federal cases for this company, it affirmatively alleges that Aqua Terra US Holding LLC (federal Defendant) is the same party as Aqua Terra Water Management a/k/a Aqua Terra U.S. Holdings, L.L.C. (state Defendant).[8]  Plaintiff uses the names interchangeably when referring to the party. *Compare* Original Texas Compl. ¶ 4 (referring to "Defendant Aqua Terra Water Management") *with* Operative Texas Compl. ¶ 4 (referring to "Defendant Aqua Terra Water Management a/k/a Aqua Terra U.S. Holdings, L.L.C.").  Further, in the state complaint, Plaintiff used a/k/a to make clear its position that Aqua Terra Water Management and Aqua Terra U.S. Holdings, L.L.C. are slightly different names for the same entity.  Operative Texas Compl. ¶ 4.  Pappas Harris also alleges in its state complaint that "Aqua Terra U.S. Holdings, LLC has been properly named as 'Aqua Terra Water Management' or simply 'Aqua Terra' in this lawsuit."  *Id.* ("While no entity named 'Aqua Terra Water Management' is registered with the Texas Secretary of State, Aqua Terra U.S. Holdings, LLC is registered to do business in Texas with the same office location and

---

[7]      Pappas Harris cites *Sheerbonnet, Ltd. v. Am. Ex. Bank Ltd.*, 17 F.3d 46 (2d Cir. 1994), to support its contention that the state and federal cases are not parallel.  Resp., Dkt. 72 at 42.  In *Sheerbonnet*, however, the plaintiffs were different — the state case was brought by creditors seeking funds, and the federal case was initiated by an unrelated company that "expressed no interest in the pendency of" the state case.  *Sheerbonnet*, 17 F.3d at 50. The court found that the dissimilarities between plaintiffs meant that the cases were not parallel.

[8]      For the purpose of this motion, the Court must take the facts in the complaint as true.  *See Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017).

management personnel who were directly involved with the facts giving rise to this case."). Finally, Aqua Terra's filings in the state case are signed by Aqua Terra US Holdings, LLC, the same name Plaintiff uses for the Defendant in the federal complaint.  *See, e.g.*, State Ct. Mot., Dkt. 66-10 at 1; State Ct. Riley Decl. Dkt. 66-10 at 102.

Even if the Court were to conclude that Aqua Terra US Holding LLC (federal Defendant) and Aqua Terra Water Management L.P. (state Defendant)[9] are different entities, accepting the allegations of the federal complaint as true, the interests of Aqua Terra US Holding LLC are clearly congruent with those of Aqua Terra Water Management L.P.  In its Complaint in this Court, Pappas Harris alleges that Aqua Terra US Holding, LLC owns Aqua Terra Water Management, L.P. and Advance Hydrocarbon Corporation.  FAC ¶ 5.  Hall, a defendant in the state action, is allegedly the President of both Advance and Aqua Terra,[10] suggesting that the interests of Aqua Terra US Holding LLC will be well represented in the state action by its president and by its subsidiaries, Aqua Terra Water Management L.P. and Advance.  *Id.* ¶ 33. Pappas Harris further contends that Aqua Terra and Advance "act in unison" and that Aqua Terra US Holding is the company through which the Bregal entities finance and manage Aqua Terra Water Management, demonstrating their congruent interests in disproving any liability to Pappas Harris.  *Id.*  Accordingly, even if the two corporate entities are not identical, Aqua Terra US Holding's interests are clearly congruent with those of the state court defendants, further indicating that the federal and state cases are parallel.

---

[9]        Although the state court defendant is Aqua Terra Water Management a/k/a Aqua Terra U.S. Holdings, L.L.C., Pappas Harris refers to that entity as Aqua Terra Water Management L.P. in the operative complaint in the federal action.  *See* FAC ¶¶ 3, 6, 10, 42.

[10]        According to Pappas Harris, Hall did not specify of which Aqua Terra entity he is the President in his dealings with respect to the transaction at issue in this case, further suggesting that the two entities are the same or very closely related.  *See* FAC ¶ 33.

### 3.     Bregal Entities

The two Bregal entities, Bregal Partners and Bregal Investments, are only defendants in

the federal action.  *Compare* FAC ¶¶ 3–4 *with* Operative Texas Compl. ¶¶ 3–7.  But Pappas

Harris alleges that the Bregal entities are closely related to the state court defendants in that

Bregal Partners, Bregal Investments, and Aqua Terra are alter egos of each other.  FAC ¶¶ 32–

34; Resp., Dkt. 71 at 8.[11]  Pappas Harris additionally contends that the Bregal entities are

"actively involved in the management and control of Advance and Aqua Terra" as evidenced by

their shared board members.  FAC ¶ 33.  Pappas Harris further asserts that Paul McGill, who

allegedly controlled the negotiations, "serves as both officer/director of Bregal and directed

Aqua Terra in this transaction."  *Id.*  Although Bregal Partners contests this version of events,

asserting that it is a "separate business[]" operating solely out of the Bailiwick of Jersey and that

none of its employees or agents "had any role or responsibility whatsoever in the contemplated

transaction," Mem. of Law, Dkt. 61 at 1–2, 6, because the Court must take the facts in the

complaint as true for the purpose of this motion, *see Phillips v. Citibank, N.A.*, 252 F. Supp. 3d

289, 295 (S.D.N.Y. 2017), the Court evaluates the congruency of interests based on the facts as

alleged by Plaintiff.

Given Plaintiff's factual allegations, the Court finds that Bregal Partners and Bregal

Investments have interests that are congruent to those of the state defendants.  A favorable

outcome for the defendants in the state case would benefit the Bregal entities because it would

establish that no contract was breached and relieve the Bregal entities of any liability to Pappas

Harris, demonstrating that their interests are indeed congruent.  *See Freed v. J.P. Morgan Chase*

---

[11]     Pappas Harris also claims that Bregal Investments owns Bregal Partners, that the two entities share a
principal place of business, employees, and a website, and that they both use the name Bregal "to conduct business
and to confuse the identity of the actual directing or contracting party."  FAC ¶¶ 4, 32.

*Bank, N.A.*, 756 F.3d 1013, 1019 (7th Cir. 2014) (emphasis in original) (finding congruence because "while the various defendants are not identical in the two cases, their *interests* are nearly identical: to show that neither fiduciary duties nor the partnership agreement were breached").

Furthermore, the allegations that the Bregal entities "manage[] or own[]" Aqua Terra, FAC ¶¶ 3, 32, taken as true, indicate that Bregal's interests are congruent with the interests of Aqua Terra.  "The 'same parties' requirement may be satisfied even though technically distinct corporate entities are involved in the various pending actions." *Aetna Cas. & Sur. Co. of Hartford, Conn. v. Kerr-McGee Chem. Corp.*, 875 F.2d 1252, 1256 (7th Cir. 1989); *cf. Nakash v. Marciano*, 882 F.2d 1411, 1416–17 (9th Cir. 1989) ("[Plaintiff]'s further argument that the parties are not identical is disingenuous.  The present parties are all named in the [state] suit; the only difference is the absence of all of the corporate entities owned and operated by the parties."); *Sequin, LLC v. Renk*, No. 20-CA-62, 2020 WL 5995205, at *6 (D.R.I. Oct. 2, 2020) (internal quotation and citation omitted) ("[W]here corporate entities owned and operated by the parties are parties to one suit but not another, cases are sufficiently parallel.").  Because the Bregal entities "manage[] or own[]" Aqua Terra, FAC ¶ 3, they are related corporate entities with congruent interests.

It bears noting that the Bregal entities and Aqua Terra are represented in the federal action by the same law firm, Kasowitz Benson Torres LLP.  Notices of Appearance, Dkts. 19, 21.[12]  Representation by the same attorney is further evidence of a congruence of interests. *Whitten Ranch, Inc. v. Premier Alfalfa, Inc.*, No. 09-CV-3007, 2009 WL 1844482, at *2 (D. Neb. June 18, 2009); *see also Quality One Wireless, LLC v. Goldie Grp., LLC*, 37 F. Supp. 3d 536,

---

[12]     Before it was dismissed, Bregal Partners was represented in the state action by Bonds Ellis Eppich Schafer Jones LLP, the same law firm that represents Aqua Terra before the state court.  *See* State Ct. Mot., Dkt. 62-2 at 23; State Ct. Mot., Dkt. 66-10 at 7–8.

541, 544 (D. Mass. 2014) (noting that "the sharing of same counsel" further evidences "congruent interests" for *Colorado River* parallelism).  Identical representation further supports the conclusion that the parties in the two cases are substantially similar and that the cases are parallel.

In short, the interests of the Bregal entities are congruent to those of Aqua Terra: the Bregal entities allegedly manage, own, and are alter egos of Aqua Terra; the three entities share an interest in demonstrating that there was no contract with Pappas Harris; and the three entities are represented by the same counsel in the federal action (and the two involved in the state case were represented by the same counsel in state court).

### 4. Pappas Harris Relies on Inapposite Case Law

Pappas Harris cites several cases to support its contention that the parties in the federal case are not substantially similar to the parties in the state case.  But the referenced cases are unpersuasive either because they involve federal parties with interests that were not congruent with the interests of the associated state parties or because the two cases involve substantially different issues.  For example, Pappas Harris cites *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590 (S.D.N.Y. 2013), and *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627 (S.D.N.Y. 2011), to support its position that the parties in this matter are not substantially similar.  Resp., Dkt. 72 at 42 & n.11.  But in both cited cases, the exclusively-federal defendants were all affiliated with a business that was not represented in the state court action.  *Dalzell*, 923 F. Supp. 2d at 598 (declining to abstain because all Bergstol-affiliated entities were absent from the state case); *DDR*, 770 F. Supp. 2d at 645 (declining to abstain because all Siemens-affiliated entities were absent from state case).  In contrast, here all Defendants in the federal action are either identical to or affiliated with defendant entities in the state court action.

17

Pappas Harris further cites *Grgurev v. Licul*, No. 15-CV-9805, 2020 WL 1922688 (S.D.N.Y. Apr. 21, 2020), in which the Court declined to abstain because it would have left one individual, who was accused of misappropriation, as a non-party.  Resp., Dkt. 72 at 42–43 (citing *Grgurev*, 2020 WL 1922688, at *4).  The court found that if the corporate entities, and not the individual, were the only exclusively-federal defendants, the cases could have been parallel because the entities adequately represented each other's interests.  *Grgurev*, 2020 WL 1922688, at *4.  Although the opinion does not include detailed reasoning, it appears that the court retained jurisdiction because the state defendants had no incentive to defend against the misappropriation claim against the exclusively-federal individual defendant and the outcome in the state case might not resolve the allegations against him.  Here, the Bregal entities are "actively involved in the management and control" of one of the state court defendants, *see* FAC ¶ 33, such that their interests are adequately represented in state court.  And for the reasons described above, resolution of the state court claims would necessarily resolve the claims in the federal matter.  Accordingly, the Bregal entities' absence from the state case does not prevent the parties in the two cases from being substantially similar.

The remaining cases cited by Pappas Harris fare no better.  *See* Resp., Dkt. 72 at 42, 43 (citing *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 664 (S.D.N.Y. 2016) (finding claims to be substantially different but noting that "corporate entities owned and operated by [each other]" could be substantially similar parties); *Grover v. Sattar*, No. 18-CV-2402, 2019 WL 8356587, at *5 n.5, *8 (E.D.N.Y. Dec. 16, 2019) (finding no congruent interests between a state defendant who served as counsel and broker to some federal defendants when claims in federal and state cases were also "inherently different and [sought] different remedies"); *Eagle One Roofing Contractors, Inc., v. Acquafredda*, No. 16-CV-3537, 2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) (finding that parties had incongruous interests when claims against them were not closely

enough related to warrant exercising federal jurisdiction)).  Unlike in Plaintiff's cited cases, the claims here are clearly substantially similar, and the parties are related corporate entities, so the cases are parallel.

Pappas Harris relies on these same cases to argue that dismissal is inappropriate because it "would leave [Bregal Partners] and [Bregal Investments] free from *any* proceeding."  Resp., Dkt. 72 at 42 (emphasis in original).  But Pappas Harris cannot point to a single case where that fact — on its own and without more — supported a finding that federal and state cases were not parallel.  Many courts have found abstention appropriate even when the exclusively-federal defendants would no longer be party to any proceeding.  *See, e.g.*, *Iacovacci*, 2019 WL 2074584, at *5; *Pabco*, 2013 WL 1499402, at *2; *Garcia*, 1999 WL 587902, at *1; *Cong. Talcott*, 1996 WL 499337, at *1, *3; *Interstate Material Corp.*, 847 F.2d at 1288.  Moreover, the test used is whether the exclusively-federal parties' interests are congruent with those of the state parties, not whether abstention would mean that certain parties would no longer be parties to any proceeding.[13]  Accordingly, the fact that abstention means that the Bregal entities would be free from any proceeding carries little weight.

In short, the federal and state cases in this matter are parallel because they involve substantially similar parties litigating substantially similar issues.

## II.    The Circumstances Are Sufficiently Exceptional to Warrant Abstention

Having determined that the proceedings are parallel, the Court must next consider a six-factor test to determine whether exceptional circumstances support abstention.  The six factors are:

---

[13]    For the same reason, it is of no moment that Bregal Partners was dismissed from the Texas case for lack of personal jurisdiction.  It does not matter *why* Bregal Partners is not a party in the Texas action; it matters only that it has congruent interests with parties that are.

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk*, 673 F.3d at 100–01.  "[The] test is not subject to precise rules, but rather should 'be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.'"  *Telesco*, 765 F.2d at 362 (quoting *Cone,* 460 U.S. at 21).  No one factor is dispositive, and the weight assigned to a single factor may vary depending on the circumstances.  *Vill. of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) (citing *Cone*, 460 U.S. at 16).

Factors that are neutral are evidence that exceptional circumstances do not exist; they favor exercising jurisdiction.  *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) ("[F]acial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it.").  Every factor does not have to favor abstention for a court to abstain.  *See, e.g.*, *Lawrence Moskowitz*, 2020 WL 1503558 (abstaining even though three factors weighed against abstention); *Iacovacci*, 2019 WL 2074584 (same); *Cong. Talcott*, 1996 WL 499337 (abstaining when two factors weighed moderately in favor of federal jurisdiction).  The Court applies each factor in turn.

## A. Court Assuming Jurisdiction over Property

The first factor considers whether a court has exercised jurisdiction over property or if the case is "inextricably linked" to property over which a court has exercised jurisdiction.  *See Tuebor Reit Sub LLC v. Paul*, No. 19-CV-8540, 2020 WL 4897137, at *5 (S.D.N.Y. Aug. 19, 2020).  Because there is no res involved in this litigation, this factor is neutral.

### B.  Convenience of the Federal Forum

Next, the Court considers whether the federal forum in New York is more convenient for the parties than the state forum in Texas.  *See Niagara Mohawk*, 673 F.3d at 101.  Pappas Harris alleged in the Texas action that Aqua Terra is registered to do business and has an office in Texas and that its local management personnel were personally involved in the underlying transaction.  Operative Texas Compl. ¶ 4.  Pappas Harris further contends that the Bregal entities are alter egos of and are directly involved in managing Aqua Terra.  FAC ¶¶ 3–4, 8.  Although the FAC alleges that Aqua Terra's principal place of business is in New York, *id.* ¶ 5, the fact remains that the dispute arises from events occurring in Texas over assets located in Texas.  *Id.* ¶ 11.  As a result, relevant evidence and witnesses are more likely to be located in Texas than in New York, further supporting the conclusion that Texas is the more convenient forum for the Defendants.  Pappas Harris is a Texas company doing business in Texas, *id.* ¶ 2, so Texas is certainly a convenient forum for it.

Moreover, duplicative, simultaneous litigation is necessarily inconvenient.  *See, e.g.*, *Phillips*, 252 F. Supp. 3d at 299 (citation omitted) ("There is plainly inconvenience in having to litigate actively in both state and federal courts at the same time."); *Colony Ins. Co. v. Danica Grp., LLC*, No. 13-CV-1714, 2014 WL 4417353, at *7 (E.D.N.Y. Sept. 8, 2014) ("[F]orcing [defendant] to litigate in two courts would be unduly burdensome . . . .").  Given the distance between Texas and New York and the similarity of the two lawsuits, the federal forum is inconvenient.  This factor favors abstention.

### C.  Avoiding Piecemeal Litigation

"Third, we evaluate whether abstention by the federal court will avoid 'piecemeal litigation.'"  *Niagara Mohawk*, 673 F.3d at 101.  This factor is "the most critical," particularly because duplicative litigation "cause[s] friction between state and federal courts," which should

be avoided.  *Ash v. Alexander*, No. 99-CV-3820, 2000 WL 20704, at *3 (S.D.N.Y. Jan. 12, 2000)

(citation omitted); *see also Gen. Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d

Cir. 1988) (affirming abstention when "district court placed the greatest weight on the third

factor, the avoidance of piecemeal litigation."); *Phillips*, 252 F. Supp. 3d at 299–300 (quotations

and citation omitted) ("The danger of piecemeal litigation is the paramount consideration in the

analysis, due in part to the possibility of inconsistent disposition of the claims.").  In this matter,

both cases arise from the same facts, so resolution of any issue in either court may well "breed

additional litigation regarding claim and issue preclusion" or risk inconsistent rulings.  *Ash*, 2000

WL 20704, at *3.  Accordingly, this factor favors abstention.

### D.  Order in Which Actions Were Filed and Relative Progress of the Two Cases

The fourth factor considers the chronological order in which the cases were filed,

although "priority should not be measured exclusively by which complaint was filed first, but

rather in terms of how much progress has been made in the two actions."  *Bethlehem Cont. Co. v.

Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) (quoting *Cone*, 460 U.S. at 21).  In

*Telesco*, 765 F.2d at 363, the Second Circuit found that when "[t]he federal suit, . . . like that in

*Colorado River*, has not moved beyond the initial pleadings and the motion to dismiss . . . it

hardly seems wise to permit plaintiff to start anew in federal court."  *Id.*

Here, the state action was filed in March 2019, and significant progress had already been

made in that forum by the time the federal case was filed.  Discovery in Texas is now complete,

and the case is set for trial in December 2021.  Original Texas Compl. at 1; State Ct. Scheduling

Order, Dkt. 66-13 at 1; Reply, Dkt. 75 at 1.  The federal action was filed in August 2020, and, as

in *Telesco*, it has not progressed past the motion to dismiss stage.  The upcoming trial date in

Texas indicates that the state case has progressed significantly beyond the federal case, so this

factor favors abstention.

### E.  Source of Law

When federal law provides the rule of decision, this factor weighs against abstention.  *See Vill. of Westfield*, 170 F.3d at 124.  This case involves only state law claims, so this factor favors abstention.

### F.  Adequacy of State Procedures to Protect Plaintiff's Federal Rights

The final consideration is whether the state forum can adequately protect the plaintiff's federal rights.  *Niagara Mohawk*, 673 F.3d at 103.  "[N]o federal rights are at stake" when, as here, a case "is brought solely under state law."  *Phillips*, 252 F. Supp. 3d at 302 (quotation omitted) (citing, *inter alia*, *Gardner v. Weisman*, No. 06-CV-6003, 2007 WL 30068, at *5 (S.D.N.Y. Jan. 3, 2007) ("This factor is inapplicable because none of Petitioner's federal rights are at issue in the instant proceeding."); *Sun Life Assur. Co. of Canada (U.S.) v. Gruber*, No. 05-CV-10194, 2006 WL 1520524, at *5 (S.D.N.Y. June 1, 2006)).  Here, the federal case is brought solely under state law, so there are no federal rights to protect.

Pappas Harris argues that the state court proceeding will not protect its rights because "[Bregal Partners] will not submit to jurisdiction in the state court action."  Resp., Dkt. 72 at 44. But, as discussed above, abstention does not require that the state case have identical parties to the federal case; federal courts have abstained from cases that included defendants not named in the state proceedings, even when such defendants were dismissed from the state case.  *Garcia*, 1999 WL 587902, at *1.  More importantly, Pappas Harris fails to identify any *federal right* that would go unprotected in the state proceeding.

Moreover, Pappas Harris's choice to sue first in state court also indicates the adequacy of the state court to protect its interests.  *See id.* at *8 ("The state court can adequately decide the substantive issues underlying both the federal and state actions.  This is evidenced by the fact that plaintiffs initially chose the state forum for litigation of their claims.").

In short, given the lack of federal rights in play and the adequacy of the state court, this factor favors abstention.

In light of the inconvenience of the federal forum, the risk of piecemeal litigation, the relative progress of the state court case, the fact that only state law claims are at issue, and that Pappas Harris has no federal rights to protect, the Court finds that, on balance, this case falls within the exceptional circumstances warranting abstention.

## III.    Dismissal or Stay

"The decision whether to stay or dismiss a federal suit under the *Colorado River* doctrine is committed to the discretion of the district court." *Bethlehem*, 800 F.2d at 327 (citing *Cone*, 460 U.S. at 19). "[T]he decision to invoke *Colorado* River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Cone*, 460 U.S. at 28; *see also Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 77 (2d Cir. 1996) ("There is no difference between a stay and a dismissal for purposes of the *Colorado River* doctrine."). Given the substantial overlap between the state and federal actions, the Court is confident that it will have "nothing further to do," *Cone*, 460 U.S. at 28, once the state court action is resolved. Accordingly, in consideration of "conservation of judicial resources and comprehensive disposition of litigation," *Colorado River*, 424 U.S. at 817 (citation omitted), the Court finds that a dismissal — and not a stay — is appropriate in this case.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss pursuant to the *Colorado River* doctrine is GRANTED. Because this resolves the entire case, Bregal Partners' motion to

dismiss for lack of personal jurisdiction is DENIED as moot.  This case is DISMISSED without prejudice.[14]

The Clerk of Court is respectfully directed to terminate all pending motions and deadlines and to close this case.


**SO ORDERED.**

**Date:  July 27, 2021**
**      New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[14]     Because *Colorado River* abstention addresses the Court's subject matter jurisdiction, dismissals on such grounds must be without prejudice.  *See Leytman v. United States*, 832 F. App'x 720, 721 (2d Cir. 2020) (holding that because dismissals pursuant to 12(b)(1) signal a "lack of adjudicatory power, such dismissals must be without prejudice").